UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ALISON B.,[1]

                                        Plaintiff,                          DECISION AND ORDER

-vs-

                                                                            1:21-CV-0969 (CJS)
COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

_____

## I. INTRODUCTION

In August 2021, Alison B. ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB"). Compl., Aug. 26, 2021, ECF No. 1. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Mar. 18, 2022, ECF No. 10; Def.'s Mot., Apr. 6, 2022, ECF No. 11. For the reasons set forth below, Claimant's motion for judgment on the pleadings [ECF No. 10] is granted, the Commissioner's motion [ECF No. 11] is denied, the ALJ's decision is reversed, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion.

## II. BACKGROUND

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the

_____

[1] The Court's Standing Order, issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

resolution of the motions presently before the Court.

A. Claimant's Application

Claimant filed a DIB application in February 2019, alleging a disability onset date of September 4, 2018. Transcript ("Tr."), 209,[2] Nov. 17, 2021, ECF No. 4. She indicated that her ability to work was limited by Stage I breast cancer, diabetes, high blood pressure, glaucoma, cataract, peripheral neuropathy, and joint pain due to chemotherapy. Tr. 235. In June 2019, the Commissioner denied Claimant's DIB claim at the initial level, stating that "[w]e have determined that your condition is not expected to remain severe enough for 12 months in a row to keep you from working." Tr. 94. Claimant asked that the Commissioner reconsider the decision and review additional evidence, including a record from her ophthalmologist indicating push/pull and lifting restrictions and a biopsy from her left breast. Tr. 107. On reconsideration, the Commissioner again determined that Claimant's condition was not severe enough to be considered disabling. Tr. 107.

B. The Hearing Before the First ALJ

After the Commissioner denied her application, Claimant appeared with counsel on May 6, 2021 for a hearing before an Administrative Law Judge ("ALJ"). Tr. 27. Counsel for Claimant gave the following opening statement:

> Our claimant is now 58 years old. She has four years of college education. She has past relevant work I would classify as retail sales in appliances. As she performed that work, I would say that's at the at least the medium level of exertion because she did have to put stock away as well as move appliances on the floor. She's not engaged in any substantial gainful activity since her alleged onset of September 4, 2018.
>
> She stopped working at that time due to complications and side effects from chemotherapy treatments . . . . We argue that she has severe impairments

---

[2] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

of post breast cancer treatment and radiation of the left breast. Well, obviously, chemo is a whole-body experience. But primarily, she is suffering from residual side effects from her chemotherapy treatment with primarily neuropathy of her hands and feet as well as joint pain.

Tr. 33.

In her testimony, Claimant further explained why she stopped working in September 2018:

Well . . . I had started my chemo treatment [in September 2018]. And I tried to work as long as I could, but it got to the point the chemo treatments were making me extremely tired. They were making me nauseous. I had diarrhea. I couldn't leave the floor talking to a customer. So, I would have to grin and bear it. On occasion, I had to tell them I had to go check stock, but that was the way to get to the restroom when I knew I didn't have that stock. And it just got to be too much. I was getting weaker in my knees. I couldn't stand as long. I had no time to sit dealing with the public. Plus, the -- my immune system was getting compromised. Even my oncologist recommend I not be around all those different people.

* * * *

I had neuropathy during chemo, but it just got worse after chemo [in January 2019]. Knee weakness got worse, I was falling unexpectedly with the weak knees, still do now. Just being sick, nauseous most mornings still, weak joints, still have the chemo brain fog.

Tr. 44–46.

Claimant testified that she lives with her husband, who is disabled. Tr. 36. Regarding her education and work history, Claimant testified that she had earned a Bachelor of Science degree in Design, and had been working since 2006 as a commissioned sales associate for Sears dealing in large appliances. Tr. 39. Claimant stated that she "worked until [she] could no longer work," but eventually she had to stop. Tr. 45. She said that she "can't multitask like [she] used to, can't remember like [she] used to . . . . can't move like [she] used to, tired a lot, can't stand too long, can't sit too long, just overall sick most of the time, still have backaches." Tr. 46. Claimant testified that she

could tolerate sitting for "[p]robably a half hour, 45 minutes," standing "probably about an hour, hour and a half," and that she has to lie down and stretch out throughout the day, but can take care of her own personal hygiene and household chores. Tr. 49, 53. In addition, Claimant stated that her "neuropathy feels like bad frostbite . . . . [with] tingling in the hands . . . . Sometimes [she] can't hold anything or use [her] hands." Tr. 47. Given these issues, she said that "[b]uttons are hard . . . . [and z]ippers are as bad . . . ." Tr. 51. She said she could reach "a little bit over [her] head, but not straight out." Tr. 53.

Claimant also testified that she experienced issues with anxiety and depression, and was doing televisits with a mental health counselor. Tr. 55. She stated that she never tried to commit suicide or harm herself, but that some days she didn't care if she woke up. Tr. 55. She said that she had been prescribed Duloxetine to help with her depression and neuropathy, but wasn't sure if it was helping her or just making her sleepy. Tr. 56.

In addition to Claimant's testimony, the ALJ also took testimony from an impartial vocational expert (VE) at the hearing. Using the Dictionary of Occupational Titles (DOT), the VE classified Claimant's past position as a household appliances salesperson. Tr. 58. The ALJ proposed a hypothetical individual to the VE with a functional capacity similar to that which the ALJ later determined Claimant to have, and the VE testified that that individual would be able to perform the position of household appliances salesperson as it is generally performed. Tr. 59. However, the VE stated that the individual would not be able to perform the position if she would be off task for 20 percent of an eight-hour workday, or would have two to three unexcused absences per month. Tr. 59.

C. The ALJ's Decision

On May 20, 2021, the ALJ issued a decision in which he concluded that Claimant

was not disabled, and hence not entitled to DIB benefits. Tr. 20.

At the outset, the ALJ found that Claimant met the insured status requirements for DIB benefit[3] through December 31, 2023. Tr. 13. Then, at step one of the Commissioner's "five-step, sequential evaluation process,"[4] the ALJ found that Claimant had not engaged in substantial gainful activity since the alleged disability onset date of September 4, 2018. Tr. 13.

At step two, the ALJ determined that Claimant had two severe impairments: diabetes mellitus and peripheral neuropathy secondary to chemotherapy. Tr. 13. In addition, the ALJ found that Claimant's following impairments were non-severe: breast cancer, Stage I, chemotherapy and radiation; hypertension; right shoulder impairment; glaucoma; obesity; and depressive disorder. Tr. 13. As part of this analysis, the ALJ performed the "special technique" required under 20 C.F.R. § 404.1520a for all mental impairments,[5] and concluded that Claimant had only mild limitations in the four functional

---

[3] Claimants must meet the insured status requirements of the Social Security act to be eligible for DIB benefits. See 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

[4] In addition to the insured status requirements for DIB benefits, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

[5] When a claimant alleges a mental impairment, the Commissioner's regulations require the ALJ to apply a "special technique" at the second and third steps of the five-step evaluation process. *Petrie v. Astrue*, 412

areas of ability to understand, remember or apply information; to interact with others; to adapt or manage herself; and to concentrate, persist, or maintain pace. Tr. 15–16.

At step three, he considered Listing 11.14 for Claimant's motor functioning, and 13.10 for her breast cancer, but found that the severity of Claimant's physical or mental impairments did not meet or medically equal the criteria of listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 16–17. Then, before proceeding to step four, the ALJ determined that Claimant had the residual functional capacity[6] ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she "can occasionally stoop, kneel, crouch, crawl, climb ramps and stairs, or climb ladders ropes and scaffolds." Tr. 17. Based on this RFC, the ALJ found that Claimant was capable of performing her past relevant work as a household appliances salesperson. Tr. 20. Consequently, the ALJ determined that Claimant was not disabled, and not entitled to DIB benefits. Tr. 20.

On July 19, 2021, the Commissioner's Appeals Council denied Claimant's request to review the ALJ's decision. Tr. 1. The ALJ's decision thus became the "final decision"

---

F. App'x 401, 408 (2d Cir. 2011) (citing 20 C.F.R. § 404.1520a). First, the ALJ must evaluate the claimant using "Paragraph A" criteria to evaluate the claimant's pertinent symptoms, signs, and laboratory findings and determine whether he or she meets the requirements of one of the mental impairments listed in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 ("App'x 1, § 12.00"). *See* 20 C.F.R. § 404.1520a(b)(1); § 416.920a(b)(1). If the claimant does have such an impairment, the ALJ must assess the claimant's limitations in four broad areas of mental functioning that constitute the Paragraph B criteria: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself (collectively, the "Paragraph B criteria"). 20 C.F.R. § 404.1520a(c)(3); § 416.920a(c)(3).

The ALJ must rate the degree of the claimant's limitation in each of the Paragraph B criteria using a five-point scale: none, mild, moderate, marked, or extreme. 20 C.F.R. § 404.1520a(c)(4); § 416.920a(c)(4). To satisfy the "Paragraph B" criteria, a claimant's mental disorder must result in extreme limitation of one, or marked limitation of two, of the four criteria. App'x 1, § 12.00F(2). After rating the degree of functional limitation resulting from the claimant's mental impairment(s), the ALJ must then determine the severity of the mental impairment(s). 20 C.F.R. § 404.1520a(d); § 416.920a(d).

[6] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

of the Commissioner.

### III. LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to disability insurance benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months.'" 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision as to whether a claimant has a disability that would entitle him or her to an award of benefits. The fourth sentence of § 405(g) empowers the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner of Social Security . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *See Tirado v. Bowen*, 842 F.2d 595 (2d Cir. 1988).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec.*

*Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal citation and quotation marks omitted). Consequently, once an ALJ finds facts, a reviewing court can reject those facts only if a reasonable factfinder would have to conclude otherwise. *See Brault*, 683 F.3d at 448.

## IV. DISCUSSION

In her motion for judgment on the pleadings, Claimant raises three issues for the Court's review. Pl. Mem. of Law, Jan. 28, 2022, ECF No. 14-1. First, Claimant argues that the ALJ failed to properly consider the opinion of Dr. Gordon Steinagle. Pl. Mem. of Law at 19–22. Second, Claimant argues that the ALJ did not properly determine her residual functional capacity. Pl. Mem. of Law at 22–24. Third, Claimant maintains that the ALJ failed to properly assess the consistency of her allegations with the evidence of record. Pl. Mem. of Law at 25–30. The Commissioner maintains that the ALJ properly evaluated the totality of the evidence, and supported his conclusions with substantial evidence. Def.

8

Mem. of Law, Apr. 6, 2022, ECF No. 11-1.

A. The ALJ's Evaluation of Dr. Steinagle's Opinion

In February 2020, Claimant was seen by Gordon Steinagle, D.O. for an independent medical exam, the purpose of which was to "ascertain the claimant's various diagnoses, and correlate with her present functional capacity." Tr. 1393. Pursuant to Dr. Steinagle's protocol for such visits, he conducted a targeted medical exam; reviewed the medical records provided by Claimant; and produced a lengthy report summarizing the medical history he reviewed, the findings of his exam, and his opinion regarding Claimant's functional capacity. Tr. 1393–1410. Dr. Steinagle's "physical ability assessment" indicated, among other things, that Claimant was capable of standing or walking, of fine manipulation using either hand, and of lifting or carrying more than five pounds less than occasionally each day; and of firm grasp only occasionally. Tr. 1409–10. He opined that she was never capable of lifting and carrying more than ten pounds. Tr. 1410.

In his decision, the ALJ performed a short analysis of Dr. Steinagle's opinion:

I find the opinion of Gordon Steinagle, M.D., an independent medical examiner, less persuasive. He determined that the claimant was limited in her ability to stand and walk and could only lift and carry less than five pounds. He also found that the claimant was limited in fine manipulation and reaching (Exhibit 35F). His opinion is not consistent with his own clinical findings. For example, he noted that the claimant had intact reflexes, sensation and motor strength. Gait was intact. His own examination does not support his limitations.

Tr. 19. Claimant maintains that this analysis constitutes reversible legal error, as "the ALJ failed to engage in the analysis required by the regulations as to the opinion of Dr. Steinagle." Pl. Mem. of Law at 19. The Court agrees.

*Legal Principles*

Under regulations effective for all claims filed after March 27, 2017, the ALJ is required to apply 20 C.F.R. § 404.1520c to evaluate medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). § 404.1520c(c) lists a number of factors the Commissioner must consider, including: supportability, consistency, the length and nature of the relationship of the source with claimant, the source's specialization, and other factors "that tend to support or contradict a medical opinion . . . ."

As the Second Circuit has observed,

> The [new] regulations explain that when "evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings," the "most important factors . . . are supportability . . . and consistency." *Id.* The regulations further require the agency to "explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [its] determination or decision." *Id.* § 404.1520c(b)(2).

*Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022). The consideration of "supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." § 404.1520c(c)(1). The consideration of "consistency" means that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." § 404.1520c(c)(2).

Under the new regulations, an ALJ's failure to adequately explain how he or she considered the supportability and consistency of a medical opinion in the record is

procedural error. *Loucks*, 2022 WL 2189293 at *2. Nevertheless, even if the ALJ commits such an error, the reviewing court may affirm if "a searching review of the record assures us 'that the substance of the [regulation] was not traversed.'" *Loucks*, 2022 WL 2189293 at *2 (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (internal citation and quotation marks omitted)). On the other hand, if the ALJ has not set forth "good reasons" for finding an opinion unpersuasive, a reviewing court cannot conclude that the error was harmless, and the matter must remanded for the ALJ to "comprehensively set forth its reasons." *Claudio-Montanez v. Kijakazi*, No. 21-2027, 2022 WL 17819123, at *2 (2d Cir. Dec. 20, 2022) (citing, *inter alia*, *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("Where there is reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her determination made according to correct legal principles.")).

*Application*

In the present case, the ALJ did not adequately explain how he considered the supportability and consistency factors for Dr. Steinagle's opinion, and he did not set forth sufficient "good reasons" such that a searching review of the record could satisfy the Court that the substance of the regulation was not traversed.

To begin with, consideration of supportability requires the ALJ to assess how well a medical source's opinion is supported with "objective medical evidence" and "supporting explanations." 20 C.F.R. § 404.1520c(c)(1). Thus, the ALJ's statement that Dr. Steinagle's "opinion is not consistent with his own clinical findings" goes to supportability. Tr. 19. However, the ALJ's supportability analysis is incomplete at best. He states merely

that Dr. Steinagle's examination showed Claimant had "intact" reflexes, sensation, motor strength and gait. This observation may call Dr. Steinagle's standing and walking restrictions into question, but it does not address restrictions that Dr. Steinagle perceived in "fine manipulation," reaching, lifting, and carrying.

Moreover, the ALJ failed to address the consistency factor. As indicated above, the "consistency" factor requires the ALJ to compare the medical source's opinion and "evidence from other medical sources and nonmedical sources" in the file. *See Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20CV0502AJNKHP, 2021 WL 363682, at *15 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Cuevas v. Comm'r of Soc. Sec.*, No. 20CV0502KMWKHP, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022). In addition to a summary of his physical examination of Claimant, Dr. Steinagle's report includes a list over four pages long of Claimant's medical records that he reviewed, and another two pages listing the non-medical records. Yet not only does the ALJ fail to acknowledge Dr. Steinagle's records review, he also fails to cite any other medical evidence in the record that contradicts Dr. Steinagle's opinion. To be sure, in another part of the decision the ALJ generally cites the consultative examiner's findings to suggest claimant had "intact hand and finger dexterity and normal grip strength bilaterally," (Tr. 19, citing 1167–70), but he does not draw a connection with Dr. Steinagle's conclusions. In fact, the ALJ only vaguely compares the opinions of each of the medical sources, and makes only conclusory statements regarding their consistency with the evidence. *See, e.g.,* Tr. 19 (finding the medical examiners' opinions "somewhat persuasive," but finding without discussion or specific examples "that additional medical records show that the claimant's conditions are more limiting th[a]n what they determined.").

12

"Where an ALJ 'merely states' that an examining physician's opinion is 'not consistent with[ ] the overall medical evidence,' he has failed to adequately explain his conclusions regarding the consistency factor." *Brianne S. v. Comm'r of Soc. Sec.*, No. 19-CV-1718-FPG, 2021 WL 856909, at *5 (W.D.N.Y. Mar. 8, 2021) (citation omitted). Accordingly, without in any way commenting on the merit of the ultimate conclusions reached by the ALJ, the Court finds that the matter must be remanded to the Commissioner for a more thorough analysis and explanation of the opinion evidence consistent with 20 C.F.R. § 404.1520c.

B. Claimant's Other Arguments

The Court will not address Claimant's remaining challenges to the decision because, after properly applying the factors set forth in 20 C.F.R. § 404.1520c to evaluate opinion evidence in the record, the ALJ may reach alternative conclusions. *See generally Gibbs v. Acting Comm'r of Soc. Sec.*, No. 20CIV6225NSRJCM, 2023 WL 21867, at *6 (S.D.N.Y. Jan. 3, 2023) (declining to consider a number of claimant's challenges to the ALJ's decision after remanding to the Commissioner to reconsider the weight given to opinion evidence).

CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Claimant Alison B.'s motion for judgment on the pleadings [ECF No. 10] is granted, the Commissioner's motion for judgment on the pleadings [ECF No. 11] is denied, the ALJ's decision denying benefits is REVERSED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment and close this case.

SO ORDERED.

DATED:        March 31, 2023
              Rochester, New York

                                CHARLES J. SIRAGUSA
                                United States District Judge